BOARD OF EDUCATION OF CITY OF DETROIT *v.* MOROSS.[1]

EMINENT DOMAIN — CONDEMNATION OF SCHOOL SITE — DETROIT BOARD OF EDUCATION.

> If the provisions of the primary school law authorizing the condemnation of school sites are extended to the city of Detroit by section 4774, 2 Comp. Laws, there is nothing in the statutes relieving the Detroit board of education from obtaining the concurrent vote of two-thirds of the qualified voters of the district in the designation and purchase of a site, as provided by section 4665, and proceedings by the board without such vote are unauthorized.

Certiorari to Wayne; Rohnert, J. Submitted October 22, 1907. (Docket No. 112.) Decided December 10, 1907. Rehearing denied March 31, 1908.

Petition by the board of education of the city of Detroit against Julia V. Moross and others to condemn certain real estate for a school site. From an order overruling demurrers to the petition, respondents bring certiorari. Reversed, and proceedings quashed.

*Clark, Jones & Bryant, Augustus C. Stellwagen,* and *Elmer L. Allor,* for appellants.

*P. J. M. Hally* (*T. E. Tarsney,* of counsel), for appellee.

HOOKER, J. Property in Detroit belonging to the respondents was condemned for a school site through proceedings in the circuit court, which proceedings were removed by them to this court by certiorari. It is claimed that the circuit court had no jurisdiction, for the following reasons:

1. The act under which the board of education filed its petition has no force in Detroit.

---

[1] The opinion filed on the original hearing in this case was withheld from publication pending the rehearing.

2. The recorder's court has exclusive jurisdiction in all cases to which said board is a party.

3. If said court would otherwise have jurisdiction, the provisions of the act have not been complied with, and the court did not, therefore, obtain jurisdiction.

Our understanding is that the only authority for an attempt to purchase or condemn this land for a school site consisted of resolutions of the board of education, which counsel for the respondents assert to be insufficient. The petitioner bases its claim of authority upon the primary school law (2 Comp. Laws, § 4774) which provides:

"All provisions of this act shall apply and be in force in every school district, township, city and village in this State, except such as may be inconsistent with the direct provisions of some special enactment of the legislature."

If it be assumed (and we do not express an opinion on the point) that the primary act has application to the Detroit schools, the authority to designate, purchase, and condemn sites is to be found in section 4665, subds. 4–6, 4729 and 4730 as amended by Act No. 182, Pub. Acts 1903.

Section 4665, subd. 4, gives the qualified voters, when lawfully assembled, authority "to designate as hereinafter provided a site," etc. Subdivision 5 gives such voters, so assembled, authority to direct the purchase of sites, lawfully determined upon, and subd. 6, authority to vote a tax therefor.

Under the title "Sites for Schoolhouses," sections 4729 and 4730, as amended (and the change made has no bearing upon the question before us), prescribe the method referred to in section 4665, subd. 4, of "designating sites." They provide:

"SEC. 2. Whenever a site for a schoolhouse shall be designated, determined, established or enlarged, in any manner provided by law, in any school district, and such district shall be unable to agree with the owner or owners of such site upon the compensation to be paid therefor, or for the land to enlarge the same, or in case such district shall, by reason of any imperfection in the title to said site,

or land to be added thereto, arising either from break in the chain of title, tax sale, mortgages, levies, or any other cause, be unable to procure a perfect, unincumbered title in fee simple to said site, or land for the enlargement thereof, the district board of such district shall authorize one or more of its members to apply to the circuit judge, if there be one in the county, or to a circuit court commissioner of the county, or to any justice of the peace of the city or township in which such school district shall be situated, for a jury to ascertain and determine the just compensation to be made for the real estate required by such school district for such site, or for the enlargement thereof, and the necessity for using the same, which application shall be in writing, and shall describe the real estate required by such district as accurately as is required in a conveyance of real estate: *Provided,* That whenever any school district shall have designated, selected or established in any manner provided by law, a schoolhouse site, or land for the enlargement thereof, such selection, designation or establishment shall be prima facie evidence to said jury of the necessity to use the site so established.

"SEC. 3. It shall be the duty of such circuit judge, circuit court commissioner, or justice of the peace, upon such application being made to him, to issue a summons or venire, directed to the sheriff or any constable of the county, commanding him to summon eighteen freeholders residing in the vicinity of such site, who are in nowise of kin to the owner of such real estate, and not interested therein, to appear before such judge, commissioner, or justice, at the time and place therein named, not less than twenty nor more than fifty days from the time of issuing such summons or venire, as a jury to ascertain and determine the just compensation to be made for the real estate required by such school district for such site, or for the enlargement thereof, and the necessity for using the same, and to notify the owner or occupant of such real estate, if he can be found in the county, at the time when and the place where such jury is summoned to appear, and the object for which such jury is summoned; which notice shall be served at least ten days before the time specified in such summons or venire for the jury to appear as hereinbefore mentioned."

These sections contain no authority for a purchase or condemnation by the board, without prior action by the voters of the district.

Referring to the last section quoted, counsel for the board say:

"It was and is the contention of petitioner that the language of the above section, 'in any manner provided by law,' was inserted in this piece of legislation by the legislature, knowing that in all school districts of the State of Michigan it was not the practice to have a meeting of the qualified voters of a school district in order that their votes might be recorded for the designation or enlargement of a school site, and that the insertion of those words was an additional expression by the legislature that this act could be taken advantage of and utilized by any of the school districts in the State of Michigan."

We discover nothing in this record to indicate what the practice of the school officers of Detroit has been, or anything in the brief to support the proposition that such practice, whatever it may have been, can be considered in determining whether the action taken in this case was a designation of a site "in any manner provided by law." For that we must look at the statute. To require action by the concurrent vote of two-thirds of the qualified voters of a district in the designation and purchase of a school site has been the policy of this State since 1846, and action of a school board without such has never been sustained. See *Andress* v. *Board of Inspectors*, 19 Mich. 332; *Heck* v. *School District*, 49 Mich. 551.

The proceedings are reversed and quashed, with costs to respondents.

GRANT, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.